## W. L. Boyd v. The State.

1. FALSE SWEARING WITH CONSENT OF DEFENDANT. The court charged the jury "if any testimony has been introduced by the defendant, upon which he relies, that is false, and you believe it is sworn to with his knowledge and consent, that is, of itself, an incriminating circumstance, and would be an admission of the truth of all that had been stated by the witnesses who say to the contrary, and whom you believe to be credible in themselves." *Held*, that the proposition above stated is sustained by no principle of law, and takes away the right of the jury to weigh the testimony.

2. REVERSIBLE ERROR. *What is.* To entitle the defendant to a reversal it is not necessary that he *must* have been injured by the error complained of it; is sufficient if he *might have* been injured thereby.

---

### FROM DAVIDSON.

---

Appeal in error from the Criminal Court of Davidson county. MATT. W. ALLEN, J.

E. H. EAST, QUARLES & TURLEY, J. J. FORD and JOHN V. WRIGHT for Boyd.

ATTORNEY-GENERAL LEA and TULLY BROWN for the State.

COOKE, J., delivered the opinion of the court.

The defendant, Boyd, was indicted for the murder of Louisa F., *alias* Birdie Patterson, *alias* Louisa Nicholson. He was tried at the September term, 1883, of the criminal court of Davidson county, and convicted of murder in the second degree, which was reversed on appeal to this court, and the cause remanded for another trial: 14 Lea, 161. He has

been again tried and convicted of the same offense, and has again appealed to this court.

Many reasons have been assigned and urged in argument why this judgment should be reversed and a new trial again awarded the defendant. The only ones, however, which we deem necessary to notice, are the following: The deceased was killed by a pistol-shot wound in the left breast, from which she very soon thereafter became speechless, and died within the space of forty minutes, without making any statement as to the person by whom the shot was fired. She and the defendant were alone in the room at the time she was shot. On the trial the defendant advanced a theory that the deceased had shot herself. The State examined a number of witnesses, among whom were the persons who first entered the room after the shooting was done, and also others who were of the coroner's jury who held an inquest over the deceased before the body was removed from the room where the killing was done. The deceased had on when shot, as an outer garment, a white or light colored sack, which was clean, and which was buttoned in front and fastened around her with a belt, and through which the ball penetrated before entering the breast. All the witnesses examined by the State testified that they examined this sack, some of them immediately after the deceased was killed, and also upon the coroner's inquest, as well as the face, neck and breast of the deceased, in order to see if there were any powder burns or stains upon them, or either of them, and they state that there were no stains of powder or

burns, or smoke of powder, upon this garment, or upon the face, neck or breast.

After the inquest, the body, with this sack, along with the rest of her clothing, was nailed up in a box and carried to an undertaker's establishment, to be prepared for interment, and the defendant introduced some witnesses who testified that they examined said sack, and also the person of the deceased, after it was taken to the undertaker's, and that there were powder stains or burns plainly visible, not only upon the sack, but also upon the neck, face and breast of the deceased. And on the trial the sack was exhibited, and evidently then had numerous powder burns or stains upon it that were readily seen at a considerable distance. The witnesses who had examined it in the room where the deceased was killed, and just after the killing, stated on the trial that these stains were not then upon it.

There was also testimony tending to show that the deceased herself could not have held a pistol at such a distance from her breast and fired it, that there would not have been left powder burns or stains upon this outward garment or sack.

In regard to this matter the court charged the jury, among other things not exceptional, as follows: " If one set of witnesses say there were powder burns or stains, and another set say there were no powder stains or burns, it is for you to decide exclusively which is the truth, under the rules that will hereafter be laid down, and if any testimony has been introduced by the defendant, upon which he relies, that is false,

and you believe it is sworn to with his knowledge and consent, this is, of itself, an incriminating circumstance, and would be an admission of the truth of all that has been stated by the witnesses who say to the contrary, and whom you believe to be credible in themselves."

He also charged the same proposition as applicable to the introduction of the witnesses on part of the State. This instruction, we think, is erroneous. We know of no principle of law which sustains the proposition as above contained, and have been referred to none. It certainly took away from the jury, in the event they believed the defendant had procured witnesses to testify falsely upon this subject, and that the State's witnesses were, "in themselves, credible," all right to weigh or consider the testimony of the State's witnesses upon this subject, as to whether, although credible, they might not have been mistaken, or from failure of memory or other cause, misstated the facts as to that matter; but required them, in the event they came to the conclusion that the defendant did introduce and rely upon testimony which he knew to be false, and that the State's witnesses upon this subject were credible in themselves, to take these facts as an admission by the defendant of the truth of all they had stated upon that subject. That the procurement or willful introduction of false testimony is an incriminating circumstance against the party introducing it, all the authorities concur. But that this is to be, under any circumstances, taken as an admission by the defendant of the truth of all that the

other witnesses have stated to the contrary, in our judgment, is not the law.

Says Mr. Greenleaf: "Fabrication of evidence, however, does not, of itself, furnish any presumption of law against the innocence of the party, but is a matter to be dealt with by the jury. Innocent persons, from the influence of terror, from the danger of their situation, have been sometimes led to the simulation of exculpatory facts, of which several instances are stated in the books": 1 Greenl. Ev., sec. 37, citing 3 Inst., 104, and Wills on Circum. Ev., 113. Again, the same author says: "In regard to the suppression, fabrication or destruction of evidence, the common law furnishes no conclusive rule. The presumption, as we have seen in a former volume, in such cases, is strong against the party, for the motive of so doing is generally a consciousness of guilt, but the presumption of guilt is not conclusive; because innocent persons, under the influence of terror from the danger of their situation, or induced by bad counsel, have sometimes been led to the simulation or destruction of evidence, or to prevarication and other misconduct, the usual concomitants of crime. But the burden of proof in these cases is on the prisoner to explain his conduct to the satisfaction of the jury": 3 Greenl. Ev., sec. 34.

Mr. Burrell says: "The fabrication or corruption of evidence has been very justly considered as creating against the party who has had recourse to such a practice, a presumption even stronger than the destruction or suppression of it. The detection of the forgery of real evidence is generally a strong circum-

stance against an accused individual, although, standing alone, it can not safely be considered as conclusive,. owing to the fact that innocent persons have, occasionally, been betrayed into the weakness of resorting. to it." " But," he adds, " the detection of a deliberate attempt to corrupt the integrity of a witness (constituting, as it does, a substantive offense in itself), is a circumstance which seems to be of force enough. to exclude the application of almost any affirmative supposition whatever": Burrell on Circum. Ev., 435, 436. See also, to the same effect, Wills on Circum. Ev., 82, 85.

Mr. Wharton says: "This is frequently done for the purpose of attracting attention in a direction different from the true one, and when proved, is properly considered as a moral indication entitled to great weight": Whart. Am. Crim. Law, sec. 715.

Again he says: " Was it done with a view to self-exculpation, and if so, does it bear the marks of guilty consciousness, or may it be treated as the act of an innocent man, who, from timidity, seeks this method of avoiding a trial?" Whart. Am. Crim. Law, sec. 827.

It is very earnestly insisted, however, that conceding the instruction as erroneous, it could, in view of the evidence in the record, have worked no injury to the defendant, and consequently there should be no reversal of the cause on account of it. As it is, said, if the jury believed this evidence on part of the defendant was false and procured by the defendant, and that the witnesses adduced by the State as

Boyd *v*. The State.

to this matter were credible, they would, necessarily, under proper instructions, have found the facts as testified to by them. It is a sufficient answer to this to say, that it was the peculiar province of the jury to determine this fact from the evidence, and it could not be taken away from them without a violation of the rights of the defendant. The fact was material, and this court has often said, that to entitle the defendant to a reversal it is not necessary that we shall see that the defendant *must* have been injured by the error complained of, but it is sufficient if he might have been injured by it.

Various other exceptions have been taken to the charge of the court and errors assigned in argument, and while other portions of the charge, in one or two instances, may be subject to some verbal criticism, we do not think it contains any other reversible error, nor do we deem it necessary to notice any of the other exceptions insisted upon. For the error in the charge above specified, however, we reverse the case and award another trial.